**BELLE CITY AMUSEMENTS, INC., Appellant,**

v.

**DOORWAY PROMOTIONS, INC., Appellee.**

No. 35A05–0912–CV–711.

Court of Appeals of Indiana.

Oct. 22, 2010.

Matthew G. Grantham, Bowers Brewer Garrett & Wiley, LLP, Huntington, IN, Attorney for Appellant.

Richard Delaney, Adrian L. Halverstadt, III, Delaney Hartburg Roth & Garrott, LLP, Huntington, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Belle City Amusements, Inc. ("Belle City") appeals the trial court's judgment in favor of Doorway Promotions, Inc. ("Door-way") on Doorway's breach of contract claim.

We affirm in part, reverse in part, and remand.[1]

### ISSUE

Whether the trial court properly awarded Doorway damages on its breach of contract claim.

### FACTS

Belle City provides and operates carnival rides and concessions at fairs and festivals in several states. Doorway is an event promoter and has been in business for approximately thirty-five years. James Amstutz is the president of Doorway.

As a promoter, Doorway "promote[s] or coordinate[s] special events for a wide variety of non-profit organizations," including the Three Rivers Festival (the "Festival") in Fort Wayne. (Tr. 10). Doorway's "contract with the [Festival] makes [Doorway] the official midway" provider for the Festival. (Tr. 90).

On or about January 31, 2007, Doorway entered into a lease with the Board of Trustees for the Allen County War Memorial Coliseum (the "Coliseum"). Doorway agreed to lease a portion of the Coliseum's parking lot from July 9, 2009, through, and including, July 18, 2009, for a total of ten days, for the purposes of erecting a midway during the Festival. Doorway agreed to pay the Board of Trustees $2,400.00 "for each event day or 15% of the gross Box Office receipts, whichever is greater ...." (App.39) (emphasis omitted). Thus, Doorway was obligated to pay rent in the amount of at least $24,000.00 for use of the Coliseum during the Festival in 2009.

1. We heard oral argument in this matter on September 13, 2010, in Indianapolis. We thank counsel for their presentations.

On July 27, 2007, Belle City and Doorway entered into an agreement (the "Agreement"), whereby Belle City agreed to "present a complete midway," including "food, game and merchandise concessions," for the 2008 and 2009 Festival. Doorway agreed to provide the midway site, namely the "Allen County War Memorial Coliseum Parking Lot," for the Festival. (App.34). Belle City, however, agreed to "be responsible for all trash pick-up and trash containers, portable toilet facilities and police security" at the midway site and also agreed to "reimburse Doorway for all direct costs involved with event security and clean-up." (App.34).

The Agreement further provided as follows:

[Belle City] will pay Doorway 30% of the gross receipts for the first $100,000.00 from rides and shows, after applicable taxes (if any), and 35% of all ride and show receipts over $100,000.00.... [Belle City] also agrees to pay Doorway $5,000.00 or $140.00 each for food, game and merchandise concessions, whichever is greater.

. . . .

[Belle City] will provide a cash settlement to Doorway on the following schedule:

*2008*

1) Monday, July 14, 2008, for July 10–13, plus Advertising & Concessions;

2) Friday, July 18, 2008, for July 14–17;

3) Saturday, July 19, 2008, for July 18 & 19;

4) Payment on receipt of invoice for all security and lot clean-up fees, plus any other costs due Doorway not covered by payments 1–3.

*2009*

1) Monday, July 13, 2009, for July 9–12, plus Advertising & Concessions;

2) Friday, July 17, 2009, for July 13–16;

3) Saturday, July 18, 2009, for July 17 & 18;

4) Payment on receipt of invoice for all security and lot clean-up fees, plus any other costs due Doorway not covered by payments 1–3.

Doorway will have promotions and advertising tie-ins with local media, etc., and other types of promotion. [Belle City] will provide $9,000.00 for advertising....

(App.35). Finally, the Agreement provided as follows: "This contract is *non-assignable* by [Belle City] unless agreed to in writing by Doorway." (App.34) (emphasis added).

Following the 2008 Festival, a representative from Belle City informed Amstutz that Belle City wished to be released from the Agreement for the 2009 Festival. Shortly thereafter, in July of 2008, Belle City entered into a contract to operate a fair in Lexington, Kentucky. In September of 2008, Belle City's counsel sent a letter to Doorway advising that Belle City "hereby gives [Doorway] notice of its termination of the [Agreement] relating to the [Festival] scheduled next July, 2009." (Ex. 5). On or about October 13, 2008, Doorway's counsel sent a letter to Belle City's counsel, indicating Doorway's refusal to release Belle City from the Agreement.

On February 23, 2009, Doorway filed a complaint against Belle City for breach of contract. Doorway filed an amended complaint on March 2, 2009. Doorway alleged as follows:

2. The Agreement is not assignable and requires Belle City . . . to present a complete midway at the . . . Coliseum on July 10–19, 2008 and July 9–18, 2009....

3. In reliance on said Agreement, Doorway entered into a lease agreement

with the Board of Trustees of the ... Coliseum to lease the facilities for the dates of the midway events. In further reliance on the Agreement, Doorway expended time, incurred expenses, and did forego other business opportunities with the full expectation that Belle City would comply with its contractual obligations to furnish the midway events as set forth in the Agreement. Doorway remains obligated under the lease agreement with the Board of Trustees to pay rent and make other expenditures.

4. During the midway event in July, 2008, a petroleum spill occurred at the leased facility requiring clean-up costs of not less than $6,200.00, which clean-up costs are the direct responsibility of Belle City. Demand has been made upon Belle City to pay said clean-up costs, and Belle City has refused to do so ....

5. By letter dated September 11, 2008, Belle City notified Doorway ... that it repudiated and unilaterally terminated the Agreement and would not be performing its obligations under the Agreement for the July 9–18, 2009 event.

(App.28–29). Accordingly, Doorway sought damages "in an amount not less than $50,000.00" for "lease payments, promotional and media and related expenses, clean-up costs, lost opportunities and lost profits ...." (App.29). Subsequently, "around the first of April" of 2009, Doorway cancelled the Festival's midway for 2009. (Tr. 92).

Belle City filed its answer and affirmative defense on April 27, 2009. Belle City admitted that it notified Doorway that it was terminating the Agreement; denied that the Agreement was not assignable; and asserted that Doorway failed to mitigate damages by "disregard[ing]" Belle City's offer "to find another entity that could provide services for the July 9–18, 2009, 'midway event' ...." (App.26).

On November 12, 2009, the parties filed a pre-trial stipulation, stipulating to the following:

1. [Belle City] repudiated and breached the Agreement between [Doorway] and [Belle City], dated July 27, 2007, which is attached to [Doorway]'s Amended Complaint by canceling and failing to perform the complete midway at the [Coliseum] on July 9–18, 2009. No stipulation is made with regard to [Doorway]'s claim for damages arising out of the aforesaid repudiation and breach, and no stipulation is made with regard to [Belle City]'s affirmative defense of mitigation of damages.

2. [Belle City] is liable to [Doorway] for damages in the amount of $6,200.00 arising out of a petroleum spill occurring at the [Coliseum] on July 18, 2008.

(App.16).

The trial court conducted a bench trial on the issue of damages on November 12, 2009. Doorway introduced into evidence its records of profits derived from the Festival from the year 2000 through 2008. Its profits were as follows:

| Year | Profit |
|------|--------|
| 2000 | $61,486.26 |
| 2001 | $56,603.14 |
| 2002 | $56,869.39 |
| 2003 | $49,860.61 |
| 2004 | $36,881.62 |
| 2005 | $23,901.54 |
| 2006 | $20,457.97 |
| 2007 | $ 7,570.83 |
| 2008 | $11,917.15 |

According to Amstutz, Doorway calculated these profits by subtracting its expenses from "the portion of the ride ticket sales that [Doorway] was paid by ... [Belle City]"; the flat rate amount received by Doorway from Belle City for concessions; and the amount paid by Belle City "to supplement [Doorway's] advertis-

ing budget."[2] (Tr. 60; 61). The expenses included Doorway's payments to the Festival, Doorway's portion of advertising costs, and the "cost of the [C]oliseum," including rent. (Tr. 61).

The average profit for the last four years of the Festival amounted to $15,961.87. Amstutz, however, testified that this amount was "very conservative" because Doorway had increased its advertising budget for those years but had planned to "at least cut back" on advertising in future years. (Tr. 66). Thus, Doorway calculated its expected profit for 2009 to be approximately $20,000.00. Amstutz testified that he estimated Doorway's total lost profits from 2009 through 2013, due to Belle City's breach of contract, to be from $75,293.72 to $94,341.97.[3]

Amstutz testified that Doorway had not paid 2009 rent to the Coliseum pursuant to its lease. According to Amstutz, the Board of Trustees of the Coliseum had agreed that Doorway could satisfy, or "flip," its rental obligation for 2009 by organizing "a similar event in 2010 but that one way or another [Doorway] w[as] contractually bound whether [it] did an event or not for the [$24,000.00]." (Tr. 70–71).

Amstutz further testified that in 2005, the Festival began installing rides in a downtown park during the Festival, which drew some people away from the midway promoted by Doorway. This resulted in a decrease in attendance at Doorway's mid-

way, and therefore, a decrease in profits. Nonetheless, Amstutz opined that Doorway could "wait out" the downtown event and "eventually that one would go away," resulting in increased profits for future Festivals. (Tr. 90).

As to continuing the Festival beyond 2009, Amstutz testified that Doorway did not believe it could continue promoting the Festival after 2009 because of the loss of "continuity . . . when there's a disruption of . . . dates" due to the cancellation in 2009. (Tr. 54). He further testified that due to cancelling the 2009 Festival, it would be "difficult if not impossible" to find another midway provider" because providers would no longer consider the Festival "an established bonafide event . . . ." (Tr. 55). Once Doorway cancelled the Festival for 2009, it believed that it was "out of the . . . Festival forever." (Tr. 56).

The trial court entered its order on November 18, 2009, awarding damages to Doorway as follows:

1. The amount of six thousand two hundred dollars ($6,200.00) as stipulated.

2. The amount of twenty four thousand dollars ($24,000.00) which represents the amount owed by [Doorway] to the [Coliseum] for rental of the space for the Midway for the year 2009.

3. The sum of seventeen thousand five hundred dollars ($17,500.00) for the loss

---

**2.** Doorway received $5,500.00 from Belle City for concessions in 2000 and 2001; $7,000.00 from 2002 through 2007; and $5,000.00 in 2008. Doorway received advertising reimbursements from Belle City in the amount of $6,000.00 from 2000 through 2002; $7,000.00 from 2003 through 2007; and $9,000.00 in 2008.

**3.** In calculating these amounts, Amstutz used a discount rate of "three percent of what [Doorway's] present value of . . . [its] lost

profits are, using the assumption of . . . the four year average" of both $15,961.87 and $20,000.00. (Tr. 68). Thus, where Doorway calculated its expected profits for the year 2009 to be $20,000.00, it forecasted $94,341.97 in total lost profits for 2009 through 2013. Where Doorway calculated its expected profits for the year 2009 to be $15,961.87, it forecasted $75,293.72 in total lost profits for 2009 through 2013.

of income for the year 2009, which is the final contract year.

4. The sum of seventeen thousand five hundred dollars ($17,500.00) for each of the years 2010, 2011, 2012 and 2013 for a total of seventy thousand dollars ($70,-000.00).

(App.3).

## DECISION

Belle City asserts that the trial court improperly awarded damages to Doorway. Specifically, Belle City argues that the trial court abused its discretion in awarding future damages for the years 2010 through 2013;[4] and in awarding 2009 rent in the amount of $24,000.00.

### 1. *Future Damages*

■ Belle City asserts that the trial court improperly awarded Doorway future damages. Regarding damages for breach of contract in general, this court has held:

> Our review of a damages award is limited. We review an award of damages under an abuse of discretion standard. We will not reweigh the evidence or judge the credibility of witnesses, and we will reverse an award only when it is not within the scope of the evidence before the finder of fact.

*Indiana Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 359, 368 (Ind.Ct.App. 2008) (internal citations omitted). It is the plaintiff's burden to prove damages, and a damage award must be supported by probative evidence. *Id.*

### a. *Damages must be reasonably foreseeable*

■ Belle City argues that the damages for 2010 through 2013 were not a foreseeable consequence of the breach of the Agreement. We agree.

■ The measure of damages for breach of contract is limited by what is reasonably foreseeable at the time the parties entered into the contract. *Rogier v. Am. Testing & Eng'g Corp.*, 734 N.E.2d 606, 614 (Ind.Ct.App.2000), *trans. denied.* "The test for measuring damages is foreseeability at the time of entry into the contract, not facts existing and known to the parties at the time of the breach[.]" *Indiana & Mich. Elec. Co. v. Terre Haute Indus., Inc.*, 507 N.E.2d 588, 601 (Ind.Ct. App.1987), *trans. denied; Rogier*, 734 N.E.2d at 614.

■ "Foreseeability means that which it is objectively reasonable to expect, not merely what might conceivably occur." *Greives v. Greenwood*, 550 N.E.2d 334, 338 (Ind.Ct.App.1990). In order to be "objective," an expectation must "relat[e] to, or [be] based on externally verifiable phenomena, as opposed to an individual's perceptions, feelings, or intentions ...." BLACK'S LAW DICTIONARY 1103 (8th ed.2004).

Here, Amstutz testified that Doorway cancelled subsequent Festivals because, in his "judgment," (tr. 54), people would no longer attend the Festival due to the cancellation in 2009, and it would be "difficult if not impossible" to hire another midway provider of the same quality as Belle City. (Tr. 55). Clearly, Doorway based its decision to cancel the Festival beyond 2009 on a subjective belief that the Festival would no longer be economically viable.

Moreover, Doorway presented no evidence that, at the time the parties entered into the Agreement in 2007, Belle City had any reason to believe that Doorway would require more than a year's notice that Belle City would not be providing the Festival's midway beyond 2009. This is

---

4. Belle City concedes that Doorway is entitled to damages in the amount of $17,500.00 for lost profits in 2009. *See* Belle City's Br. at 5, 9.

supported by the Agreement's lack of an automatic renewal clause or notice-of-cancellation requirement. Belle City could not have reasonably known in 2007 that a future breach of the Agreement would result in Doorway's decision to cancel the Festival indefinitely, thereby losing profits beyond the Agreement's term. *See Indiana & Mich. Elec. Co.*, 507 N.E.2d at 602 ("A promisor is not required to compensate the injured party for injuries which, when the contract was made, the promisor had no reason to believe would be a probable result of the breach."). Accordingly, we find that the trial court abused its discretion in awarding damages for lost profits beyond 2009.

### b. *Reasonably certain profits*

■ In addition, as provided below, even if we were to find the cancellation of the Festival to be a foreseeable result of the breach, we still would find that the projected lost profits are not reasonably certain. It is wholly improper for the trier of fact to project past profits indefinitely into the future without evidence that the projection was at least reasonably certain. *Clary v. Lite Machines Corp.*, 850 N.E.2d 423, 439 (Ind.Ct.App.2006).

Again, the trial court awarded Doorway, as the Festival's promoter, lost profits for 2010 through 2013. Doorway, however, presented no evidence that it had entered into a contract or agreement to promote the Festival beyond 2009. Given such lack of evidence, the trial court improperly awarded damages for the years 2010 through 2013. *See Jerry Alderman Ford Sales, Inc. v. Bailey*, 154 Ind.App. 632, 291 N.E.2d 92, 107 (1972) (finding an award for the loss of hauling profits improper where the "plaintiff did not introduce evidence of executed hauling contracts calling for ascertainable future profit nor evidence concerning the certainty, duration or consideration payable with respect to any existing or contemplated hauling contracts").

### c. *Goodwill*

■ Finally, a party may not recover future profits for loss of face in the industry or loss of goodwill in an action for breach of contract. *Indiana & Mich. Elec. Co.*, 507 N.E.2d at 606–07. Although Doorway denies that it is seeking damages due to loss of goodwill or reputation, we find otherwise.

Goodwill has been defined as "the probability that old customers of the firm will resort to the old place of business where it is well-established, well-known, and enjoys the fixed and favorable consideration of its customers" or "the expectation of continued public patronage."

*Rice v. Hulsey*, 829 N.E.2d 87, 90 (Ind.Ct. App.2005) (quoting *Berger v. Berger*, 648 N.E.2d 378, 383 (Ind.Ct.App.1995)). In discussing goodwill in dissolution cases, we have defined goodwill further as the "existence in a business of established relations with employees, customers and *suppliers* ...." *DeSalle v. Gentry*, 818 N.E.2d 40, 47 (Ind.Ct.App.2004) (emphasis added).

Here, Amstutz testified that it would be "difficult if not impossible" to attract midway providers in the future because the cancellation of the Festival in 2009 would result in Doorway "basically starting from scratch," and midway providers would no longer consider the Festival "an established bonafide event ...." (Tr. 55). He further testified that cancelling the 2009 Festival "established a new pattern" of prior Festival attendees attending a competing event. (Tr. 55).

It is clear that Doorway's purported lost profits arise from its perceived loss of reputation or goodwill, which it claims to be a consequence of its failure to present the 2009 Festival due to Belle City's

breach of contract. Such lost profits, however, are not recoverable under Indiana law in an action for breach of contract. *Indiana & Mich. Elec. Co.*, 507 N.E.2d at 607. For the foregoing reasons, we reverse the trial court's award of damages to Doorway in the amount of $17,500.00 for each of the years 2010, 2011, 2012 and 2013.

## 2. *Rent*

Belle City also asserts that the trial court abused its discretion in awarding Doorway $24,000.00 for the 2009 rent of the Coliseum. We disagree.

### a. *Consequential damages*

■ Belle City argues that due to a lack of evidence, the trial court improperly awarded damages for 2009 rent. Specifically, Belle City contends that "[i]t is not clear from the record" that the Board of Trustees for the Coliseum requested payment from Doorway for the 2009 rent or that Doorway had "actually paid the [Board of Trustees] any of the amount it owed." Belle City's Br. at 10.

A party injured by a breach of contract may recover consequential damages. Consequential damages may be awarded when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made. The party seeking damages must prove by a preponderance of the evidence that the breach was the cause in fact of its loss. This generally limits consequential damages to reasonably foreseeable economic losses.

*Rockford Mut. Ins. Co. v. Pirtle*, 911 N.E.2d 60, 67 (Ind.Ct.App.2009) (internal citations omitted), *trans. denied*.

The undisputed evidence shows that Doorway had entered into a lease with the Coliseum's Board of Trustees in January of 2007. Pursuant to the terms of the lease, Doorway agreed to pay the Board of Trustees rent in the amount of at least $24,000.00 for the use of the Coliseum during the 2009 Festival. Subsequently, in July of 2007, Doorway and Belle City entered into the Agreement. The Agreement stated that Doorway would provide the Coliseum as the midway site. Amstutz testified that Doorway remains "contractually bound" to pay the 2009 rent. (Tr. 70).

We find that the rent payment for which Doorway was obligated is a consequential damage arising from Belle City's breach of the Agreement. Accordingly, we find that the trial court properly awarded damages for 2009 rent.

### b. *Net profit*

■ Belle City also maintains that, by awarding rent damages, the trial court essentially awarded Doorway its projected *gross* profit for 2009. "[A] proper award of lost profits must be confined to the loss of net profits." *Indianapolis City Mkt. Corp. v. MAV, Inc.*, 915 N.E.2d 1013, 1025 (Ind.Ct.App.2009). The rationale for this rule is that a party injured by a breach of contract shall "not be placed in a better position than the party would have enjoyed had the breach not occurred." *Crider & Crider, Inc. v. Downen*, 873 N.E.2d 1115, 1118 (Ind.Ct.App.2007). Otherwise, the party would "receive a windfall in the form of that portion of lost gross income representing *expenses of operation saved by defendant's breach.*" *Alderman Ford*, 291 N.E.2d at 105 n. 6 (emphasis added); *see also INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 577 (Ind.Ct.App.2003) (stating that the "law disfavors a windfall"), *trans. denied*.

In this case, the trial court awarded Doorway its projected net profit for 2009 in the amount of $17,500.00. Amstutz tes-

tified that in calculating Doorway's net profit, it had subtracted its expenses, including rent for the Coliseum, from its gross profit.[5] The trial court separately awarded Doorway $24,000.00, which represented the amount in rent for which Doorway was obligated to pay the Coliseum's Board of Trustees. We, however, find no abuse of discretion in this award.

The rent is not an expense of operation saved by Belle City's breach of the Agreement. Rather, Doorway is obligated under a written contract to pay at least $24,000.00 to the Coliseum's Board of Trustees, despite Belle City's breach. Thus, Doorway does not realize any savings related to the lease of the Coliseum as a result of the breach of the Agreement. Accordingly, the rationale for confining an award to net profits does not apply to this case.

In conclusion, we affirm the trial court's award of $24,000.00 for 2009 rent that Doorway is obligated to pay the Board of Trustees. We, however, find the trial court's award of lost profits for the years 2010, 2011, 2012, and 2013 to be improper and remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BAKER, C.J., and CRONE, J., concur.

---

**5.** Again, the gross profit included monies paid by Belle City to Doorway for "ride ticket sales," concessions, and advertising. (Tr. 60).