**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Feb 19 2013, 9:22 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**MARK D. GERTH**
**JAMES R. COHEE**
Kightlinger & Gray, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE/CROSS-APPELLANT:

**DAVID W. STONE**
Stone Law Office & Legal Research
Anderson, Indiana

**JOHN H. SHEAN**
Shean Law Office
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| METROPOLITAN PROPERTY & CASUALTY INSURANCE CO., | ) |
| | ) |
| Appellant/Cross Appellee-Defendant, | ) |
| | ) |
| vs. | ) No. 53A01-1204-PL-179 |
| | ) |
| GARY DARLAND, | ) |
| | ) |
| Appellee/Cross Appellant-Plaintiff. | ) |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Valeri Haughton, Judge
Cause No. 53C08-1007-PL-1711

**February 19, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Metropolitan Property & Casualty Insurance Co. (also known as "MetLife") appeals the trial court's $69,259.10 judgment for Gary Darland. Darland cross-appeals the denial of his request for additional damages. We affirm in part and reverse in part.

**Issues**

MetLife raises two issues, which we restate as:

I.      whether the trial court properly determined that the repossession of Darland's boat constituted a physical loss; and

II.      whether the trial court properly awarded Darland loss of use damages for the 2010 boating season.

On cross-appeal, Darland raises one issue, which we restate as whether the trial court properly denied his request for loss of use damages for the 2011 boating season.

**Facts**

Since 1984, Darland has owned a house on Lake Monroe and has owned a boat for use on the lake. Over the years, Darland has purchased five boats from Lakeview Marina ("Lakeview") in Noblesville. On August 27, 2009, Darland negotiated the purchase of a new boat and trailer from Lakeview for the total price of $43,124.95. To pay for the boat and trailer, Darland agreed to pay $10,000.00 in cash and to provide Lakeview with various items of personal property. Darland gave Lakeview a $10,000.00 check and a $700.00 check for sales tax and delivered the various items of personal property to Lakeview. That same day, Darland and Jeff Lingerfelter, on behalf of Lakeview, entered into a resale agreement in which Darland placed the boat for sale for $45,000.00.

2

Darland took possession of the boat and trailer and used it over Labor Day weekend of 2009.

The boat and trailer were added to Darland's existing MetLife insurance policy ("the Policy"). The Policy provided in relevant part:

SECTION I

COVERAGE A
COVERAGE FOR DAMAGE TO YOUR INSURED
PROPERTY

COVERAGE PROVIDED

We will pay for physical loss to the insured property from any cause, except as excluded or limited in this policy.

* * * * *

SECTION I

CONDITIONS

* * * * * *

3. HOW WE SETTLE A LOSS

Losses covered under SECTION I – COVERAGE A – COVERAGE FOR DAMAGE TO YOUR INSURED PROPERTY will be settled, subject to any applicable deductible, according to the following provisions:

(A) Total Loss Settlement

We will pay for the total loss to your boat, outboard motor, or boat trailer if:

a. the property is stolen or completely destroyed; or

3

b. the cost of recovering and/or repairing the property, plus its salvage value, is greater than its actual cash value.

Our payment will not exceed the least of the following amounts:

1. the actual cash value at the time of loss; but not more than $25,000 for a newly acquired boat not listed in the Declarations at the time of the loss.

2. the amount necessary to repair or replace the damaged or stolen property.

3. the limit of liability shown in the Declarations applicable to the damaged property.

Ex 1 pp. 3, 6-7.

As agreed, after the Labor Day weekend, Darland returned the boat and trailer to Lakeview for winterization and storage, and the boat was placed on the showroom floor for resale. Lakeview tried to sell some of the items Darland had traded for the boat but could not sell them for enough money to pay off the financing loan on the boat held by Textron Financial ("Textron"), a floor plan lender. At all relevant times, Textron retained the manufacturer's certificate of origin to the boat.

In October or November 2009, Textron repossessed the boat and trailer because Lakeview had not paid off the debt on the boat and trailer. On March 20, 2010, Lakeview informed Darland that the boat and trailer had been repossessed. On March 22, 2010, Darland reported the repossession to MetLife and made a claim for the boat and trailer under the Policy. On April 14, 2010, MetLife issued a written denial of the claim.

4

On July 2, 2010, Darland filed a complaint against MetLife alleging breach of contract and requesting compensation for the total loss of the boat and consequential damages for MetLife's purported breach. Following a bench trial, the trial court issued findings and conclusions and entered judgment for Darland in the amount of $42,370.00 for the total loss of the boat and trailer and $26,889.10 in consequential damages for Darland's loss of use of the boat during the 2010 boating season. MetLife and Darland now appeal.

**Analysis**

*I. Breach*

MetLife asserts the trial court improperly concluded that it breached the insurance contract because repossession was not a physical loss under the terms of the Policy. It appears that the trial court's findings and conclusions were entered sua sponte. As such, the findings control only as to the issues they cover and a general judgment standard will control as to the issues upon which there are no findings. Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997). A general judgment will be affirmed if it can be sustained on any legal theory supported by the evidence. Id. Findings will only be set aside if they are clearly erroneous, which occurs only when the record contains no facts to support them either directly or by inference. Id. "A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts." Id. To determine that a finding or conclusion is clearly erroneous, we must be left with the firm conviction that a mistake has been made. Id.

In interpreting an insurance policy, clear and unambiguous language should be given its plain and ordinary meaning even if those terms limit an insurer's liability. Everett Cash Mut. Ins. Co. v. Taylor, 926 N.E.2d 1008, 1012 (Ind. 2010). "But where policy language is ambiguous, it is to be construed strictly against the insurer and in favor of the insured." Id. "This is especially true where a policy excludes coverage." Id. "Although insurers are free to limit coverage to the extent the limitations are consistent with public policy, the exclusionary clause must clearly and unmistakably bring within its scope the particular act or omission that will bring the exclusion into play." Id.

Ambiguity exists when a policy is susceptible to two or more reasonable interpretations, and the fact that the parties disagree over the meaning of the contract does not, in and of itself, establish an ambiguity. Id. at 1012-13. "Where there is an ambiguity, the contract should be construed to further the policy's basic purpose of indemnity." Id. at 1013.

We acknowledge the unique circumstances here that result in Darland's recovery. On appeal, MetLife's only argument based on the language of the Policy is that it did not breach the insurance contract because the repossession was not a physical loss under the Policy.[1] MetLife acknowledges that the Policy provides coverage for the "physical loss" of the boat and, indeed, the Policy provides, "We will pay for physical loss to the insured property from any cause, except as excluded or limited in this policy." Ex. 1 p. 3. However, MetLife asserts that "physical loss" is not specifically defined in the Policy

---

[1] The Policy excludes loss "arising out of infidelity of an insured's employee or any person to whom the insured property is entrusted." Ex. 1 p. 5. The trial court rejected MetLife's affirmative defense of "infidelity," and MetLife does not raise that issue on appeal.

6

and, when read as whole, the Policy only provides coverage for total losses for boats that were either stolen or completely destroyed.

In making its argument that repossession is not a covered loss, MetLife does not rely on any of the Policy's eighteen exclusions. Instead, MetLife relies on part of the Policy that explains how a loss is settled. This section provides:

> 3.  HOW WE SETTLE A LOSS
>
> Losses covered under SECTION I – COVERAGE A – COVERAGE FOR DAMAGE TO YOUR INSURED PROPERTY will be settled, subject to any applicable deductible, according to the following provisions:
>
> (A)  Total Loss Settlement
>
> We will pay for the total loss to your boat, outboard motor, or boat trailer if:
>
> a.  the property is stolen or completely destroyed; or
>
> b.  the cost of recovering and/or repairing the property, plus its salvage value, is greater than its actual cash value.
>
> Our payment will not exceed the least of the following amounts:
>
> 1.  the actual cash value at the time of loss; but not more than $25,000 for a newly acquired boat not listed in the Declarations at the time of the loss.
>
> 2.  the amount necessary to repair or replace the damaged or stolen property.
>
> 3.  the limit of liability shown in the Declarations applicable to the damaged property.

7

Ex 1 pp. 6-7 (emphasis added). This section goes on to explain how a partial loss is settled.

According to MetLife, the Policy "clearly states that coverage for a total loss of the boat is afforded only if the boat is stolen or completely destroyed." Appellant's Br. p. 5. We disagree with this reading of the Policy. Taken as a whole, this section describes how payments for losses will be determined. There is no indication that this section is intended to define or to otherwise exclude or limit what constitutes a "physical loss" under the Policy.

Further undermining MetLife's argument that payment for a total loss is afforded only if the boat was stolen or completely destroyed is subsection (b), which anticipates an obligation to pay for the total loss of a boat if "the cost of recovering and/or repairing the property, plus its salvage value, is greater than its actual cash value." Ex. 1 p. 6. Although MetLife includes this language in its brief, it makes no argument regarding its application, or lack thereof, here. Further, another section of the Policy explains how a "constructive total loss" will be treated and provides, "Loss to the insured property will be considered a total loss when the cost of recovery and/or repairing the damaged property exceeds its actual cash value." Id. at 8 (capitalization altered). This language clearly anticipates total loss settlement in circumstances other than theft or the complete destruction of the property.

Although MetLife was free to limit coverage for repossession, in particular repossession caused by a third-party's default, nothing in the Policy "clearly and unmistakably" does so. Everett, 926 N.E.2d at 1012. Reading the Policy as a whole, we

8

are not persuaded that the "How We Settle a Loss" section limits or excludes coverage for the physical loss associated with repossession. The Policy is not ambiguous in this regard. Even if it was, we would be required to construe it against MetLife to further the Policy's basic purpose of indemnity. See id. at 1013.

MetLife also argues that it did not undertake to insure Lakeview had good title to the boat to pass to Darland at the time the boat was purchased. In support of this argument, MetLife relies on Cueto v. Allstate Ins. Co., 544 A.2d 906, 909 (N.J. Super. Ct. Law Div. 1987), for the proposition that the bona fide purchaser of a stolen car is not entitled to coverage from his or her insurer upon the car's return to its true owner. But see, e.g., Western Farm Bureau Ins. Co. v. Carter, 979 P.2d 231, 234 (N.M. 1999) (holding that, if the plaintiffs were innocent purchasers of the stolen vehicles, the insurance policy issued to them covered the loss of those vehicles by repossession), and Butler v. Farmers Ins. Co., 616 P.2d 46, 48 (Ariz. 1980) (holding that the innocent purchaser of stolen property has an insurable interest in the property).

We are not persuaded to follow Cueto, which involved a stolen car. The repossession here arose out of a floor plan lender's security interest on the boat. Without more, we are not convinced that the reasoning of Cueto establishes that Lakeview did not have good title to the boat based on Textron's security interest when it entered into the purchase agreement with Darland.

MetLife also suggests that, if Darland's theory of recovery is accepted, there is nothing to stop a person from financing the purchase of a car, stopping payment, allowing the car to be repossessed, and then making a claim for the loss of the car. Although we

appreciate MetLife's concern, this hypothetical could be prevented by drafting the insurance contract to exclude coverage for repossession or, as the Policy here does, excluding coverage for loss "caused intentionally by an insured or at the insured's direction." Ex. 1 p. 5. The loss here arose out of the conduct of a third-party. Likewise, MetLife's concern about a person entering into a contract to purchase a home, obtaining homeowner's insurance prior to closing, and then asserting a claim for the value of the home upon the failure to close could be alleviated by including in the insurance contract language that excludes coverage under such a circumstance. These arguments do not persuade us that the repossession was not a covered loss under the terms of the Policy.

Finally, MetLife asserts that Darland is not entitled to recover the full replacement cost of the boat because he had not paid that amount for the boat and his loss was not equal to value of the boat. MetLife, however, does not direct us to any language in the Policy that limits recovery to the insured's actual out-of-pocket loss. We will not search the record to find a basis for a party's argument. Young v. Butts, 685 N.E.2d 147, 151 (Ind. Ct. App. 1997). "A court which must search the record and make up its own arguments because a party has not adequately presented them runs the risk of becoming an advocate rather than an adjudicator." Id. In the absence of argument based on actual Policy language, MetLife has not shown that the trial court committed reversible error when it awarded Darland full replacement value.

In sum, MetLife agreed to pay for the physical loss of the boat and trailer from any cause except as excluded or limited in the Policy. MetLife has not shown that the Policy excluded or limited the physical loss resulting from Textron's repossession of the boat

10

and trailer.[2]  Although this conclusion appears to result in a windfall to Darland, it is the conclusion necessitated by the arguments presented on appeal and the record before us. See Marion-Adams School Corp. v. Boone, 840 N.E.2d 462, 469 (Ind. Ct. App. 2006) ("It is a cardinal rule of appellate review that the appellant bears the burden of showing reversible error by the record, as all presumptions are in favor of the trial court's judgment."). Thus, the trial court properly awarded Darland $42,370.00 for the total loss of the boat and trailer.

## II. Damages

On appeal, MetLife argues that the trial court's award of consequential damages was improper, and Darland argues that the trial court should have awarded him additional damages for the loss of use during the 2011 boating season. Regarding damages for breach of contract, we review an award of damages under an abuse of discretion standard. Belle City Amusements, Inc. v. Doorway Promotions, Inc., 936 N.E.2d 243, 249 (Ind. App. Ct. 2010). We do not reweigh the evidence or judge the credibility of witnesses, and we will reverse an award only when it is not within the scope of the evidence before the finder of fact. Id. The plaintiff has the burden to prove damages, and a damage award must be supported by probative evidence. Id.

---

[2] On appeal, the parties dispute whether Textron lawfully repossessed the boat and trailer. This argument is based on Darland's purported status as a buyer in the ordinary course of business pursuant to Indiana Code Section 26-1-9.1-320, which provides in part, "a buyer in ordinary course of business takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence." It does not appear that this particular issue was litigated at trial or that it is outcome determinative on this appeal. As such, it is unnecessary for us to determine whether Darland was a buyer in the ordinary course of business.

Darland requested consequential damages for the loss of the boat as a result of MetLife's refusal to pay his claim. See Rockford Mutual Ins. Co. v. Pirtle, 911 N.E.2d 60, 68 (Ind. Ct. App. 2009) (holding an insurer liable for damages to compensate the insured for the insurer's breach of the insurance contract), trans. denied. The trial court found that Darland was not able to use the boat during the 2010 boating season, that he and his family used a boat seventy days during each boating season, and that it cost $384.13 per day to rent a boat, for total loss of $26,889.10.

> Regarding loss of use damages, we have stated:
>
>> In Indiana, damages for loss of use of personal property are measured by the reasonable value of the loss of use of the property for the reasonable amount of time required for repair or to obtain a replacement. Generally, the value for loss of use is measured by the fair or reasonable rental value of the property in the market area. . . . Regardless of the measure used to calculate value, when the property is totally destroyed the damages must be limited to the reasonable amount of time necessary for replacement, including a reasonable amount of time to determine if the property is repairable. The court must consider all the facts and circumstances of each case in determining the time that is reasonably necessary to obtain a replacement as the time will vary from case to case.

Persinger v. Lucas, 512 N.E.2d 865, 868 (Ind. Ct. App. 1987) (citations omitted).

When questioned about what steps he had taken to purchase a new boat after he learned of the repossession, Darland stated, "None, no money to do it with."[3] Tr. p. 40. MetLife asserts that Darland took no steps to replace the boat and is precluded from

---

[3] According to the transcript, Darland responded, "None, nobody to do it with." Tr. p. 40. Darland argues that this is typographical error and has moved to have it corrected. For the sake of argument, we will assume that the transcript was incorrect and address this issue as if the transcript read, "None, no money to do it with."

recovering any loss of use damages because he did not prove that an entire boating season, let alone two, was the reasonable time necessary to obtain a replacement. Darland responds by asserting that, because MetLife did not pay his claim, he did not have the funds to replace the boat.

In Persigner, we explained:

> In proving the reasonable time necessary to obtain a replacement, the plaintiff must provide the court with evidence of all the factors that go into the process of obtaining a replacement, including: the time required to determine that the property is unrepairable, the nature of the property, market availability of a replacement, the time required to locate a replacement, the availability and time required to obtain financing, the plaintiff's efforts to locate and obtain a replacement, the plaintiff's efforts to locate and obtain financing, the defendant's good or bad faith efforts to settle or litigate, and the plaintiff's financial ability to obtain a replacement. Although financial ability is a factor in the determination, proof of financial inability alone will not establish the reasonable time required to obtain a replacement. Furthermore, financial inability cannot be used to inflate speculatively the damages awarded for loss of use beyond the time reasonably necessary to obtain a replacement. Unless the plaintiff provides additional evidence of the reasonable time necessary to locate a replacement, or establishes that the defendant used dilatory settlement tactics, a damage award for loss of use based on financial inability alone is improper.

Persigner, 512 N.E.2d at 869 (citations omitted).

Contrary to Darland's testimony that he had no money to purchase another boat, it is undisputed that he still had the $10,000.00 he used to purchase the boat because Lakeview never cashed Darland's check. Further, there was evidence that Lingenfelter still had many of the various items Darland traded for the boat and there is no indication

13

that Darland sought the return of those items after the boat was repossessed. Moreover, there is no evidence that Darland attempted to recover the boat upon learning of the repossession, which Darland now claims was unlawful. There is no evidence that Darland sought to finance the purchase another boat.[4] There is no evidence that Darland was unable to locate a replacement boat or that MetLife used dilatory settlement tactics.

Even if Darland's testimony that he had no money to purchase another boat establishes financial inability, as we held in Persinger, financial inability alone cannot establish the reasonable time necessary to obtain a replacement. By his own testimony, Darland took no steps to purchase another boat. Without more, he has not proven that one boating season, let alone two, was a reasonable time necessary to obtain a replacement boat. The evidence does not support an award of loss of use damages in the amount of $26,889.19 for the 2010 boating season. Additionally, Darland was not entitled to any loss of use damages for the 2011 boating season.

**Conclusion**

Pursuant to the Policy, MetLife agreed to pay for the physical loss of the boat and trailer from any cause except as excluded or limited in the Policy, and it has not shown that the Policy excluded or limited the physical loss resulting from the repossession. Because Darland took no steps to purchase another boat, he did not prove that he was

---

[4] Although Darland argues that he should not be required to go into debt to obtain a replacement to relieve MetLife of its consequential damages, "[a]s a general rule, a non-breaching party must mitigate damages." Hawa v. Moore, 947 N.E.2d 421, 427 (Ind. Ct. App. 2011). Darland sat idly by during the 2010 and 2011 boating seasons and now claims $53,778.20 in damages for loss of use. To the extent mitigation of damages is at issue, MetLife has shown that Darland failed to use reasonable diligence to mitigate damages. See id. As for Darland's concerns about paying interest on a loan, we see no reason why such costs could not be considered as evidence to support a claim of consequential damages.

14

entitled to loss of use damages for the 2010 and 2011 boating seasons. We affirm in part and reverse in part.

Affirmed in part and reversed in part.

RILEY, J., concurs.

BAKER, J., dissents with opinion.

15

# IN THE
# COURT OF APPEALS OF INDIANA

METROPOLITAN PROPERTY &    )
CASUALTY INSURANCE CO.,    )
                           )
    Appellant/Cross Appellee-Defendant,    )
                           )
    vs.    )    No. 53A01-1204-PL-179
                           )
GARY DARLAND,              )
                           )
    Appellee/Cross Appellant-Plaintiff.    )
                           )

**BAKER, Judge, dissenting.**

I respectfully dissent from the majority's determination that a covered loss under the MetLife policy occurred in this instance. More particularly, I part ways with the conclusion that the boat's repossession by Textron amounted to a loss contemplated by the policy.

When reading the insurance policy as a whole, and not considering the term "physical loss" in isolation, my reading of the language set forth in the contract dictates that coverage for a total loss of the boat is afforded only in the event of a theft or complete destruction.

16

The undisputed evidence in this case demonstrates that the boat was not stolen or damaged. To the contrary, Textron lawfully repossessed the boat because its security interest had not been paid. I believe that Textron's lawful repossession of the boat was merely a consequence of Lakeview Marina's breach of contract. Thus, Darland does not have a valid claim under the MetLife policy. In my view, the MetLife policy was not designed to protect against losses that are purely financial and contractual in nature. Darland's remedy—if any—is for breach of contract against the seller, Lakeview Marina.

Again, MetLife's policy only required payment for the total loss of the boat if it was "stolen or completely destroyed," and because that did not happen in this instance, I do not believe that coverage existed. Ex 1, at 3, 6-7. Therefore, I believe that judgment should be entered for MetLife because Textron's repossession of the boat was not an insured loss under the policy.